UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| APRIL D. KNUTH, | ) | |
| | ) | No. CV-08-3059-CI |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner | ) | MOTION FOR SUMMARY JUDGMENT |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 23, 28.)  Attorney D. James Tree represents April Knuth (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

### JURISDICTION

Plaintiff protectively filed for Supplemental Security Income (SSI) on July 29, 2004.  (Tr. 97-103.)  She alleged disability due to pinched nerve in back, neck and hips, and a learning disability, with an alleged onset date of March 12, 2002.  (Tr. 104-05.)  At the hearing, the ALJ also identified the following alleged impairments: diabetes; borderline intellectual functioning; obesity; cervical spine degenerative disc disease (DDD); lumbar spine DDD; and anxiety

disorder versus post-traumatic stress disorder (PTSD). (Tr 303-04.) Her claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on February 21, 2008, before ALJ Dan R. Hyatt. (Tr. 299-322.) Plaintiff, who was represented by counsel, and vocational expert Jenipher Gaffney (VE) testified. The ALJ denied benefits on March 17, 2008, and the Appeals Council denied review. (Tr. 13-21, 4-6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 39 years old. She had a ninth grade education in special education, but did not finish high school or complete her high school equivalency tests. (Tr. 304.) Plaintiff was married and had no children. (Tr. 305.) Plaintiff reported she tested herself twice daily for diabetes for which she takes medication. (Tr. 305-06.) She had past work experience as a child care attendant, a machine packager, nurse's aide, sandwich maker/fast food worker, and furniture assembler. (Tr. 308-12, 316-17.) She stated she was let go from most of her jobs for lack of attendance or performance issues. (Tr. 311-312.) She testified she could no longer work due to pain in her back and legs. (Tr. 313.)

### ADMINISTRATIVE DECISION

At step one, ALJ Hyatt found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15.) At step two, he found Plaintiff had severe impairments of

"borderline intellectual functioning, obesity, [and] degenerative disc disease of the lumbar spine." (*Id.*) He found non-severe impairments of diabetes, degenerative disc disease of the cervical spine, and "anxiety disorder versus posttraumatic stress disorder." (*Id.*) The ALJ determined at step three the impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (*Id.*) He found Plaintiff's statements regarding her symptoms and limitations were "not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 17.) At step four, he determined Plaintiff had the residual functional capacity (RFC) to lift 10 pounds frequently and 25 pounds occasionally; stand and walk four hours in an eight-hour day; and sit for six hours in an eight-hour day, requiring an option to sit or stand at will. She was also "limited to simple, repetitive tasks with no contact with the public." (Tr. 16.) Based on this RFC and VE testimony, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 19.) Proceeding to step five, ALJ Hyatt determined Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as office helper, small products assembler and marker/pricer. (Tr. 20.) He concluded Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of his decision. (Tr. 21.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  disability, an ALJ must apply a five-step sequential
   inquiry addressing both components of the definition,
2  until a question is answered affirmatively or negatively
   in such a way that an ultimate determination can be made.
3  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
   claimant bears the burden of proving that [s]he is
4  disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
   1999). This requires the presentation of "complete and
5  detailed objective medical reports of h[is] condition from
   licensed medical professionals." *Id*. (citing 20 C.F.R. §§
6  404.1512(a)-(b), 404.1513(d)).

7      It is the role of the trier of fact, not this court, to resolve

8  conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

9  supports more than one rational interpretation, the court may not

10 substitute its judgment for that of the Commissioner. *Tackett*, 180

11 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

12 Nevertheless, a decision supported by substantial evidence will

13 still be set aside if the proper legal standards were not applied in

14 weighing the evidence and making the decision. *Brawner v. Secretary*

15 *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If

16 there is substantial evidence to support the administrative

17 findings, or if there is conflicting evidence that will support a

18 finding of either disability or non-disability, the finding of the

19 Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

20 1230 (9th Cir. 1987).

21                              **ISSUES**

22     The question is whether the ALJ's decision is supported by

23 substantial evidence and free of legal error. Plaintiff argues the

24 ALJ erred when he: (1) rejected her cervical spine DDD and mental

25 impairments as "frivolous" at step two; (2) improperly rejected the

26 opinions of medical sources; (3) improperly rejected her testimony;

27 and (4) failed to meet the Commissioner's burden at step five. (Ct.

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Rec. 24 at 10-11.)

**DISCUSSION**

**A.   Credibility**

Plaintiff argues the ALJ did not provide the requisite "clear and convincing" reasons for rejecting her subjective complaints. (Ct. Rec. 24 at 19; Ct. Rec. 30 at 7.)   When the ALJ finds a claimant's statements as to the severity of impairments, pain and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).   It is well-settled, however, that an ALJ cannot be required to believe every allegation of disabling pain, even when medical evidence exists that a claimant's condition may produce pain.   "Many medical conditions produce pain not severe enough to preclude gainful employment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Although an adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, medical evidence is a relevant factor to consider. *Social Security Ruling* (*SSR*) 96-7p.

If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).   The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*,

504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036.  Once the first test is met, the ALJ must evaluate the credibility of the claimant and make specific findings supported by "clear and convincing" reasons. *Id.*  In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in her allegations of limitations or between her statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d at 597 n.5.

The ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  As explained by the Commissioner in his policy ruling, the ALJ need not totally reject a claimant's statements; he may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *SSR* 96-7p.  "For example, an adjudicator may find credible an individual's statement as to the extent of the functional limitations or restrictions due to

symptoms; *i.e.*, that the individual's abilities to lift and carry are compromised, but not to the degree alleged." *Id*. If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas,* 278 F.3d at 959; *Fair*, 885 F.2d at 604 ("credibility determinations are the province of the ALJ").

Here, there is no evidence of malingering. In explaining his basis for the RFC determination, the ALJ summarized Plaintiff's testimony, specifically noting her testimony that she took medication for her diabetes only, took care of the household chores, had trouble bending, and weighed 269 pounds. He also referenced her testimony that fatigue and back and leg pain prevented her from sitting or standing for a long time or lifting heavy things, and that pain and fatigue affected her energy level and her ability to sleep at night and concentrate. (Tr. 17, 313.) The ALJ then found that Plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms and gave specific reasons for discounting the severity alleged. (Tr. 17.)

First, he found Plaintiff's statements were not consistent with the daily activities she described in her testimony and in the records, *i.e.*, taking care of household chores, doing laundry with her spouse's help when bending is necessary, being a primary care-giver for her father until his death in December 2004, cooking, exercising and swimming. *Id*. Inconsistency with activities of daily living is a "clear and convincing" reason to discount Plaintiff's testimony, and the ALJ properly gave specific examples to support his findings. Next, the ALJ found that Plaintiff's allegations of debilitating symptoms were not consistent with her

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

treatment record.  Plaintiff appears to argue her treatment history is not a legitimate reason to reject her testimony.  (Ct. Rec. 30 at 9-10.)   This argument is not persuasive because the Ninth Circuit Court of Appeals has held that minimal or conservative treatment for allegedly disabling symptoms is a "clear and convincing" reason to support an adverse credibility finding.  *Tommasetti*, 533 F.3d at 1039; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Light*, 119 F.3d at 792.  The ALJ accurately noted that Plaintiff was not prescribed pain medication for her allegedly disabling neck and back pain, and that she reported to her examining physician that she had not seen an orthopedic specialist for her complaints since 1999. (Tr. 17.)   The record amply supports this basis for the ALJ's credibility determination.   For example, as noted by the ALJ, Plaintiff was receiving medical care from Deana Dahl, ARNP, from May 2004 until August 2007.   (Tr. 18-19.)   Beginning in May 2004, Plaintiff was treated with medication for diabetes (which was noted as "stable") and elevated lipids.  (Tr. 193.)  Plaintiff complained of low back pain in October 2004, at which time Nurse Dahl recommended "increased activity."  (Tr. 248, 251.)  In March 2006, Nurse Dahl noted Plaintiff's back and leg pain "with walking." (Tr. 254.)   In May 2007, Plaintiff's neck and back pain were noted as mild to moderate in clinic notes, and there is no record of prescribed pain medication. (Tr. 260.)  At that time, Nurse Dahl specifically recommended stretching and regular exercise to relieve neck and back pain, and ordered x-rays.  (Tr. 261.)  The ALJ's rationally interpreted the evidence and articulated "clear and convincing" reasons for discounting the severity of Plaintiff's

assertions of disabling pain and fatigue.  It is also noted that the ALJ's credibility findings did not totally reject Plaintiff's subjective symptoms.  As discussed below, the final RFC incorporates walking and standing limitations with an option to stand and sit at will to relieve discomfort, as well as limitations caused by her borderline intellectual functioning.  The RFC is consistent with Plaintiff's medically determinable impairments and credited medical evidence, as well Plaintiff's own credible testimony.

**B.    Step Two:  Non-Severe Impairments**

Plaintiff argues the ALJ erred when he rejected her diagnosed cervical spine disorder and mental impairments as "frivolous." (Ct. Rec. 24 at 13.)  She argues the ALJ erroneously rejected the opinions of Nurse Dahl that these impairments caused significant limitations.  She also claims the ALJ improperly rejected the opinions of agency and examining physicians whose opinions, if credited, would require a finding of disability.  (*Id*. at 14-15.)

At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.,* one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations.  *See,*

*e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *SSR* 85-28 at 3.[1]  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities.  20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process.  *Id.*

As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the

---

[1] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in *SSR* 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

impairments on ability to do basic work activities." *Id*.   Thus, in determining whether a claimant has a severe impairment, the ALJ evaluates the medical evidence submitted and must explain the weight given to the opinions of accepted medical sources in the record. The agency regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.   20 C.F.R. § 416.927.   A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted).   If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*,

885 F.2d at 604.

1. <u>Cervical Spine DDD</u>

At step two, the ALJ found the medical evidence did not support a finding that Plaintiff's cervical spine condition caused significant work-related functional limitations. (Tr. 15.) Plaintiff argues this was error because the ALJ cited only to medical evidence showing a mild impairment and did not give adequate reasons for rejecting examining medical doctor Joseph Diehl's opinion that Plaintiff would have "difficulty with work activities that required repetitive motion at the cervical spine." (Ct. Rec. 24 at 14; Tr. 165.)

The record shows that Dr. Diehl stated he based this opinion on Plaintiff's subjective complaints, as well as objective findings of tenderness in the cervical area. (*Id.*) Further, he stated, "the permanent nature of any disability in this case is seriously in question." (Tr. 167.) He observed Plaintiff was receiving no medical care at the time of the exam. He concluded the use of anti-inflammatory medication "would improve her condition considerably." (*Id.*)

In his step two findings, the ALJ referenced objective imaging that showed only mild degeneration of the cervical spine and no evidence of "significant work-related functional limitations." (Tr. 15.) In his summary of the evidence, the ALJ specifically referenced Dr. Diehl's opinion that Plaintiff would have difficulty with activities involving repetitive motions of the cervical spine. (Tr. 18.) The ALJ rejected this particular limitation as unsupported by (1) the objective imaging reports showing only mild changes, and (2) opinions of other examining medical doctors. He

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

also found there was no other supporting evidence in the record that Plaintiff's ability to do work-related activities was significantly limited by cervical spine problems. (Tr. 18.) These are specific, legitimate reasons for rejecting a contradicted medical opinion. *Thomas*, 278 F.3d at 957; *see also Fair*, 885 F.2d at 605. Further, the record in its entirety supports the ALJ's rejection of this distinct limitation. For example, in later discussion of the medical evidence, the ALJ noted Dr. Diehl's opinion that Plaintiff's limitations would improve with medication. (*Id.*) He also referenced Dr. Jamie King's evaluation in which the examining physician opined Plaintiff could stand and walk for four hours, and sit for six hours in an eight-hour day with breaks. (Tr. 18, 201-03.) Dr. King specifically stated that other than postural limitations on bending, stooping and crouching, there were no other relevant limitations. (Tr. 203.)

Even if there were evidence of more than a minimal effect on Plaintiff's ability to do work activities, the ALJ considered the effects of Plaintiff's spinal disorders (severe and non-severe) throughout the five-step sequential evaluation. The final RFC determination specifically incorporated an at-will sit/stand option to relieve discomfort from exertion or postures that would be limited by her cervical spine condition. At step five, the four-hour limit on standing and walking and the stand/sit at will requirements were propounded to the VE, who then opined the hypothetical individual could perform several other jobs in the national economy. (Tr. 317-18.) Because the ALJ continued the sequential evaluation considering severe and non-severe impairments, Plaintiff was not prejudiced and the alleged error at step two would

be deemed harmless.  *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007); *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

2.  <u>Anxiety Disorder versus PTSD</u>

Citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) and *SSR* 96-2, Plaintiff appears to argue the ALJ did not properly reject the marked mental limitations assessed by Deana Dahl, Plaintiff's treating nurse practitioner.  (Ct. Rec. 24 at 16.)  However, Plaintiff argues standards that apply to an "acceptable medical source."  (*Id.* at 17.)  The *Embrey* court, as cited by Plaintiff, found uncontradicted conclusions of treating physicians cannot be disregarded unless "clear and convincing" reasons are set forth in detail.  *Embrey*, 849 F.2d at 421-22.  Here, Ms. Dahl is not a treating physician or an "acceptable medical source" for purposes of these proceedings.  Under the Regulations, a nurse practitioner is considered an "other source."  20 C.F.R. § 416.913(d).  "Other source" opinions can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The opinion of an acceptable medical source is given more weight than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater,* 74 F.3d 967, 970-71. (9th Cir. 1996).  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague*, 812 F.2d at 1232.  As ruled in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons "germane" to "other source" testimony before discounting it.

Here, the ALJ gave Ms. Dahl's August 20, 2007, medical report

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

and mental RFC assessment little weight.    (Tr. 19, 282-91.)
Although Plaintiff asserts the ALJ's reasoning was vague, the ALJ
articulated specific reasons for discounting the severe limitations
assessed by Ms. Dahl: (1) her findings were inconsistent with her
treatment record; (2) she did not prescribe pain medication; (3) she
did not require treatment for pain complaints or mental health
issues; and (4) there was no evidence of objective intellectual
functioning testing. (Tr. 19.)  The ALJ's reasoning is supported by
the record, including notes in April 2004, by Ms. Dahl that
Plaintiff reported her anxiety was "not severe," and she no longer
needed prescribed anxiety medication. (Tr. 192.)  Other treatment
notes from Ms. Dahl's clinic do not reflect complaints or
recommended treatment for anxiety or PTSD. (Tr. 193, 248-63.)

        For example, in clinic notes dated August 10, 2007, (ten days
before Ms. Dahl completed her medical report and RFC), a physician
at Ms. Dahl's clinic indicated "no unusual anxiety or evidence of
depression." (Tr. 263.)  The ALJ did not err in his rejection of
Ms. Dahl's opinion evidence.

        Citing *Regennitter v. Commissioner of Social Sec. Admin.*, 166
F.3d. 1294 (9th Cir. 1999), Plaintiff also argues the ALJ erred when
he "rejected [her] mental health impairments because of a lack of
treatment." (Ct. Rec. 24 at 16, 18.)  Plaintiff's reliance on this
case is misplaced. First, the ALJ did not reject Plaintiff's mental
impairments; he found her diagnosed "anxiety disorder versus
posttraumatic stress disorder" was not a severe impairment at step
two, but he clearly stated that this non-severe impairment "will be
considered in assessing the claimant's residual functional
capacity." (Tr. 15.)  Second, in *Regennitter*, the ALJ cited lack of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

treatment as a reason to reject the claimant's credibility, not a medical opinion. *Regennitter*, 166 F.3d at 1296. Indeed, the reviewing court in *Regennitter* held the rejection of a claimant's complaints for lack of treatment due to his inability to pay is not a "clear and convincing" reason <u>to support a credibility finding</u>. *Id.* at 1297. Further, the Ninth Circuit has held that the credibility of a claimant with mental impairments cannot be impugned because he or she fails to seek treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the ALJ neither rejected Plaintiff's claim of mental health impairment nor chastised her for lack of mental health treatment. He reasoned Nurse Dahl's failure to recommend mental health treatment or prescribed medication was inconsistent with her findings that Plaintiff was markedly limited by psychological impairments. This reasoning is not legal error and is sufficient to reject an other source opinion.

In his evaluation of mental impairments, the ALJ gave weight to opinions from examining psychologist Jamie Carter, Ph.D., and agency reviewing psychologist Janis Lewis, Ph.D., both of whom are accepted medical sources. (Tr. 19, 206-09, 218-33.) Dr. Carter diagnosed anxiety disorder and borderline intellectual function based on results of objective testing. (Tr. 209.) The ALJ summarized Dr. Carter's report, noting the reported deficits would slow Plaintiff's pace, her ability to follow directions, and her ability to learn new complex tasks. He then pointed out that Plaintiff had worked in the past with the identified mental impairments, and that there was no evidence in the record that she was incapable performing the level of work described in the final RFC, *i.e.*, simple repetitive tasks with no public contract. (Tr. 18, 19.) The state agency

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

psychologist, Dr. Lewis, reviewed Dr. Carter's evaluation and assessed Plaintiff's functional capacity in a narrative summary, as well as a check box form. (Tr. 218-34.) Dr. Lewis found Plaintiff was "capable of simple repetitive tasks and would work best with only minimal contact." (Tr. 220.)

Plaintiff argues the ALJ failed to explain the weight given Dr. Carter's opinions and ignored Dr. Lewis' numerous moderate limitations marked on the check box form. (Ct. Rec. 24 at 19.) However, Plaintiff does not identify what portions of Dr. Carter's report were erroneously rejected, or what limitations caused by anxiety vs. PTSD are supported by the record and should have been included. A review of the record in its entirety indicates the ALJ did not err in his evaluation of the psychologists' evidence or his step two finding that Plaintiff's anxiety vs. PTSD was not severe.

A mental impairment generally is considered not severe if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. § 416.920a(d)(1). Plaintiff appears to argue that her anxiety symptoms caused more than minimal limitations in her ability to work. However, she does not identify specific symptoms or how they would limit her. For example, Dr. Carter noted anxiety disturbed sleep "might affect her ability to maintain a work schedule." (Tr. 209.) This speculative opinion alone does not establish severity.

Dr. Carter also noted Plaintiff could perform her activities of daily living: she did most of her household chores; was able to read and follow recipes; did grocery shopping and laundry. She needed

reminders regarding personal hygiene, but remembered to take her medicine. (Tr. 207-208.) It appears these limitations are related to her borderline intellectual functioning impairment, which the ALJ found severe. In the area of social functioning, Dr. Carter noted Plaintiff interacted primarily with her family and husband, going out to eat and attend church. Regarding her concentration, persistence and pace, Plaintiff was able to do computer work, arts and crafts for about an hour at a time, and read for a couple of hours at a time. She had some problems getting words mixed up, and finishing her daily activities in a timely manner. Dr. Carter suggested Plaintiff's deficits in personal hygiene could affect employability. (Tr. 208-09.) Plaintiff does not argue these deficits are caused by anxiety or PTSD.

The ALJ rationally interpreted Dr. Carter's report as substantial evidence that the diagnosed anxiety disorder vs. PTSD did not cause "more than minimal limitation" in Plaintiff's ability to work. 20 C.F.R. §§ 416.920; 416.920a, 416.920a(d)(1).

Reviewing psychologist Dr. Lewis based her mental RFC assessment on Dr. Carter's evaluation. (Tr. 220.) The check box form indicates several moderate limitations; however Dr. Lewis' narrative interpretation summarizes assessed functional limitations in detail and concludes that Plaintiff was capable of simple repetitive tasks and would work best with limited public contact. (Tr. 220.) Because the ALJ did not disagree with Dr. Lewis's narrative description of Plaintiff's mental RFC (which is supported by the examining psychologist's evidence), he was not required to reject those opinions. Further, he is not required to accept the conclusory findings in the check box form. *Crane v. Shalala*, 76

F.3d 251, 254 (9th Cir. 1996); *see also SSR* 96-8p and *SSR* 96-5p.  *See also Lester*, 81 F.3d at 831 (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(non-examining physician opinion, without more, is not substantial evidence).

Because neither acceptable medical source identified more symptoms caused by anxiety or PTSD, the ALJ did not err at step two. Further, assuming this impairment were severe, Plaintiff was not prejudiced by this omission because the identified limitation caused by anxiety was considered throughout the sequential evaluation and included in the hypothetical at step five.  Therefore, the claimed error would be harmless.  *Lewis*, 498 F.3d at 910; *Stout*, 454 F.3d at 1056.

**C.    Step Five**

Plaintiff argues the ALJ erroneously relied on vocational expert testimony based on a deficient hypothetical question.  (Ct. Rec. 24 at 20.)  The ALJ may rely on vocational expert testimony if the hypothetical presented to the expert includes all functional limitations supported by the record and found credible by the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In his first hypothetical, the ALJ included all exertional limitations supported by the medical record and Plaintiff's credible testimony. Plaintiff argues the ALJ should have included limitations assessed by Nurse Dahl, which the VE opined would preclude sustained employment.  (Ct Rec. 24 at 20.)  She also contends the ALJ failed to include unrejected limitations assessed by agency psychologists. However, as discussed above, the ALJ specifically rejected Nurse Dahl's opinions with germane and specific reasons, and properly evaluated the opinions from acceptable medical sources.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

Because the ALJ was not required to include properly rejected limitations, the hypothetical relied upon by the VE reflects limitations supported by the record and credible testimony. In addition, limitations due to obesity were incorporated into the hypothetical which described an individual limited to lifting or carrying 10 pounds frequently, 25 pounds occasionally, and who could walk and stand only four hours in an eight-hour day and needed a sit/stand-at-will option. (Tr. 317.)

Obesity must be considered in a claimant's RFC because it can cause postural limitations of function. *SSR* 02-01p. An assessment should be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Here, the medical evidence upon which the ALJ based his hypothetical and RFC determination identified Plaintiff's morbid obesity, which the evaluators incorporated into in their functional assessments. For example, Dr. Diehl specifically stated that in addition to degenerative joint disease, Plaintiff's obesity "complicates her orthopedic status considerably." He also stated his final functional capacity assessment was based in part on the "objective findings of obvious morbid obesity." (Tr. 166.) Nonetheless, he concluded Plaintiff could do work activities requiring standing or walking for five to six hours of an eight-hour day with breaks every half hour to hour. (*Id.*)

Likewise, Dr. King noted Plaintiff's ability to climb on the examining table was difficult "due to her obese body habitus." (Tr.

201.) She also noted Plaintiff did not require an assistive device.[2] (*Id.*) The record shows that on exam, Plaintiff exhibited normal muscle bulk, tone and 5/5 strength in grip and upper extremities. (*Id.*) Pain in lower extremities was relieved by shifting position. (Tr. 203.) Dr. King concluded Plaintiff could do work activities as long as she had breaks and could shift her weight. (Tr. 203.) As discussed above, the ALJ incorporated these requirements in his RFC and hypothetical to address the impact of Plaintiff's obesity on otherwise mild to moderate joint disease.

The final determination regarding Plaintiff's ability to perform basic work is the sole responsibility of the Commissioner, and no special significance is given to a medical source, or other source, opinion on issues reserved to the Commissioner. 20 C.F.R. § 416.927(e), .946; *SSR* 96-5p. The ALJ's hypothetical was not deficient; therefore, the VE testimony is substantial evidence that supports the ALJ's step five findings. Where, as here, the ALJ's findings are based on a rational interpretation of substantial evidence, the Commissioner's determination can not be disturbed. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 23 )** is **DENIED;**

---

[2] There is no medical evidence Plaintiff has difficulty ambulating and must depend on a walker, canes, or crutches, which is a requirement to meet or equal the Listing for musculoskeletal impairment. *See* 20 C.F.R. § 404, Subp. P, App. 1, at 1.00(B)(1), (2)(b)(2).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 28)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be closed and judgment entered for Defendant.

DATED July 27, 2009.


                    S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23